# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

In re:

ROBERT LEE SILVERMAN and        Case No.: 3:19-bk-03255-JAF
JOAN BABETTE SILVERMAN,

       Chapter 13

           Debtors.

_____/

## CHAPTER 7 TRUSTEE'S MOTION[1] FOR APPROVAL OF SETTLEMENT AGREEMENT WITH DEBTORS

---

### NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING

Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within twenty-one (21) days from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail. You should read these papers carefully and discuss them with your attorney if you have one.

If you object to the relief requested in this paper, you must file a response with the Clerk of the Court at 300 North Hogan Street, Suite 3-150, Jacksonville, FL 32202 and serve a copy on the movant's attorney, Jacob A. Brown, Esq., Akerman LLP, 50 North Laura Street, Suite 3100, Jacksonville, FL 32202, and any other appropriate persons within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing or consider the response and grant or deny the relief requested without a hearing.

If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

---

Aaron R. Cohen, Chapter 7 Trustee (the "Chapter 7 Trustee"), by and through his undersigned counsel and pursuant to Federal Rule of Bankruptcy Procedure 9019 and Local Bankruptcy Rule 2002-4, moves the Court for entry of an Order in substantially the form

---

[1] The Trustee is filing a reciprocal Motion for Approval of Settlement Agreement in the case styled *In re Joan B. Silverman,* Case No. 3:10−bk−10718−PMG

attached hereto as **Exhibit A**, approving the terms of the settlement agreement described below (the "Settlement Agreement"), by and among the Chapter 7 Trustee, the Debtors, Joan B. Silverman ("Joan") and Robert Silverman ("Robert," and together with Joan, the "Silvermans"), and in support thereof says:

## I.    CHAPTER 7 BACKGROUND

On December 14, 2010 (the "Chapter 7 Petition Date"), Joan filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division (the "Bankruptcy Court") in the case styled *In re Joan B. Silverman,* Case No. 3:10−bk−10718−PMG (the "Chapter 7 Bankruptcy Case").  On the Chapter 7 Petition Date, the Chapter 7 Trustee was appointed Chapter 7 Trustee in the Chapter 7 Bankruptcy Case.

On October 5, 2017, the United States Trustee filed a Motion to Reopen the Bankruptcy Case (Doc. 16), and on October 6, 2017, the Bankruptcy Court entered an Order (Doc. 17) reopening the Bankruptcy Case.  On October 24, 2017, the Chapter 7 Trustee was reappointed as Chapter 7 Trustee in the Bankruptcy Case (Doc. 19).

## II.    THE LITIGATION

After the Chapter 7 Petition Date, Joan received approximately $75,200 of proceeds (the "Proceeds") from a lawsuit related to tobacco claims (the "Litigation").  The Silvermans used substantial portions of the Proceeds to acquire, improve, and furnish the real property located at 7000 SE 123rd Place, Belleview, Florida 34420 (the "Real Property").

The Chapter 7 Trustee asserts the Proceeds are property of Joan's Chapter 7 bankruptcy estate pursuant to 11 U.S.C. § 541(a)(5)(A) and Joan is not entitled to any exemptions in the Proceeds.  The Chapter 7 Trustee also asserts an equitable lien against the Real Property.  On

August 20, 2019, the Chapter 7 Trustee recorded a Trustee's Notice of Interest in Property in Official Records Book 7026, Pages 0826-0829 of the Public Records of Marion County, Florida (the "Notice of Interest").

The Silvermans assert they were not aware of the Trustee's claim of interest in the Proceeds at the time of Joan's receipt of the Proceeds, that there was no fraud or wrongdoing in use of the Proceeds at the time of receipt, and they did not learn of the Trustee's claim of interest in the Proceeds until months after the Proceeds had already been used.

### III.    CHAPTER 13 BACKGROUND

On August 26, 2019 (the "Chapter 13 Petition Date"), the Silvermans filed a voluntary petition for relief (the "Chapter 13 Petition") under the Bankruptcy Code in the Bankruptcy Court in the case styled *In re Robert Lee Silverman and Joan Babette Silverman,* Case No. 3:19-bk-03255-JAF (the "Chapter 13 Bankruptcy Case").  On the Chapter 13 Petition Date, Douglas W. Neway was appointed Chapter 13 Trustee in the Chapter 13 Bankruptcy Case.

On Schedule E/F of the Chapter 13 Petition, the Silvermans scheduled the Chapter 7 Trustee as having a nonpriority unsecured claim in the amount of $75,000.

On September 25, 2019, the Chapter 7 Trustee filed a Motion for Relief from Automatic Stay (Doc. 18) (the "Stay Relief Motion") in the Chapter 13 Bankruptcy Case.  On September 30, 2019, the Silvermans filed a Response (Doc. 22) to the Stay Relief Motion.  A preliminary hearing on the Stay Relief Motion is currently set for October 21, 2019, at 1:30 p.m.

On September 30, 2019, the Silvermans filed a Motion to Avoid Judicial Lien (Doc. 21) (the "Motion to Avoid Lien") and an Amended Chapter 13 Plan (Doc. 23) (the "Plan").   On October 21, 2019, the Chapter 7 Trustee filed a Response (Doc. 29) to the Motion to Avoid Lien. On October 24, 2019, the Chapter 7 Trustee filed Proof of Claim (Claim No. 10-1) in the total

3

amount of $75,200.00 (the "Claim").  The Claim includes a secured component of $35,000.00, secured by the Real Property, and unsecured component of $40,200.00.   On October 28, 2019, the Chapter 7 Trustee filed an Objection Confirmation of Debtors' Chapter 13 Plan (Doc. 32) and a Joinder in Chapter 13 Trustee's Objection to Property Claimed as Exempt by Debtors and Additional Objection (Doc. 33).

### III.    TERMS OF SETTLEMENT AGREEMENT

The Silvermans and the Chapter 7 Trustee have agreed to a settlement of claims related to the Litigation Proceeds (collectively, the "Settled Claims"), whereby:

1)     The Silvermans shall pay the Chapter 7 Trustee $20,000 (the "Settlement Payment");

2)     The Settlement Payment shall be paid over a period of ten (10) years with interest at the rate of 5% with 120 monthly payments of $212.00;

3)     Payment of the Settlement Payment will be secured by a second mortgage in favor of the Chapter 7 Trustee on the Real Property.  A copy of the promissory note for the Settlement Payment is attached as **Exhibit B** (the "Note") and a copy of the second mortgage securing the Settlement Payment is attached as **Exhibit C** (the "Mortgage");

4)     The Silvermans shall execute the Note and the Mortgage and deliver both to the Chapter 7 Trustee within five (5) business days of entry of an order approving this Settlement Agreement;

5)     Upon the Chapter 7 Trustee's receipt of the original, executed Note and Mortgage from the Silvermans, the Chapter 7 Trustee shall record a release of Notice of Interest in the Public Records of Marion County, Florida in the form attached hereto as **Exhibit D**;

6)      The Note and Mortgage shall be property of the estate in the Chapter 7 Bankruptcy Case and may be sold and assigned by the Chapter 7 Trustee.  Furthermore, the Silvermans acknowledge and agree that the Note and Mortgage shall constitute valid encumbrances on the Real Property, will be fully secured at the time of delivery, and that they shall not seek to avoid the Mortgage or discharge obligations under the Note;

7)      Should the Silvermans fail to timely pay sums due under the Note or otherwise comply with the terms of this Settlement Agreement, the Chapter 7 Trustee or his successors or assigns have the right to foreclose the Mortgage and assert other rights and remedies set forth therein;

8)      The Settlement Payment, the Note, the Mortgage, and proceeds of the Note shall be property of the Chapter 7 bankruptcy estate, free and clear of all liens, claims, and encumbrances, and the Chapter 7 Trustee shall distribute the Settlement Payment in accordance with the provisions of Section 726 of the Bankruptcy Code;

9)      This settlement is limited to claims the Chapter 7 Trustee could bring against the Silvermans with respect to the Settled Claims.  Nothing herein shall limit the Trustee's rights to pursue other persons or entities for claims related to the matters set forth herein;

10)      Within twenty-one (21) days after entry of an order approving this Settlement Agreement, the Chapter 7 Trustee shall withdraw his Motion from Relief from Automatic Stay (Doc. 18) and the Debtors shall withdraw their Motion to Avoid Judicial Lien (Doc. 21) in the Chapter 13 Bankruptcy Case; and

11)       Within thirty (30) days after entry of an order approving this Settlement Agreement, the Chapter 13 Bankruptcy Case shall be converted to a Chapter 7 case and the Clerk of Court shall prepare and serve the appropriate notices to creditors and Joan of such conversion.

50565022;1

For administrative purposes only, the Settlement Payment shall be allocated in full to the Chapter 7 Trustee's rights to the Litigation Proceeds.

This Settlement Agreement shall be deemed the joint work product of all parties and their respective counsel, if any, and all parties shall be considered the drafters of this Settlement Agreement. Any rule of construction to the effect that any ambiguities are to be construed against the drafting party shall not be applicable in any interpretation of this Settlement Agreement. Each of the parties declares that they have been represented by counsel in connection with the negotiation of this Settlement Agreement or have had the opportunity and wherewithal to be represented by counsel in the review, negotiation, and execution of this Settlement Agreement, and that the terms and conditions of this Settlement Agreement are understood fully and agreed to voluntarily.

Because the costs and time involved in resolving the bankruptcy estate's interest in the Settled Claims other claims described herein could yield less than what creditors will receive as a result of this compromise, the Chapter 7 Trustee believes that this compromise is reasonable and recommends it to the creditors of this estate based on the information he has received to date. This Motion is being served on all parties on the attached mailing matrix.

[SIGNATURES ON THE FOLLOWING PAGE]

50565022;1

LAW OFFICES OF MICKLER & MICKLER     AKERMAN LLP

By:*/s/ Bryan K. Mickler*_____     By: */s/ Jacob A. Brown*_____
    Bryan K. Mickler                              Jacob A. Brown
    Florida Bar No: 091790                     Florida Bar No.: 0170038
    Email: bkmickler@planlaw.com          Email: jacob.brown@akerman.com
    5452 Arlington Expressway              50 North Laura Street, Suite 3100
    Jacksonville, FL 32211                    Jacksonville, FL 32202
    Telephone: (904) 725-0822              Telephone:  (904) 798-3700
    Facsimile:  (904) 725-0855             Facsimile:  (904) 798-3730

*Attorneys for Debtors, Joan Silverman and* *Attorneys for Aaron R. Cohen, Chapter 7*
*Robert Silverman*                                   *Trustee*

*Filer's Attestation: Pursuant to Local Rule*
*1001-2(e)(3) regarding signatures, Jacob A.*
*Brown attests that concurrence in the filing of*
*this paper has been obtained.*

## <u>CERTIFICATE OF SERVICE</u>

        I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished either by electronic notification or by United States mail, postage prepaid and properly addressed, this 6th day of November, 2019, to:

Joan B. Silverman                         Aaron R. Cohen, Chapter 7 Trustee
Robert Silverman                         P.O. Box 4218
7000 SE 123rd Place                     Jacksonville, FL 32201-4218
Belleview, FL 34420

Bryan K. Mickler, Esq.                  Charles R. Sterbach
Mickler & Mickler                      Scott E. Bomkamp
5452 Arlington Expressway            United States Trustee
Jacksonville, FL 32211                400 W. Washington Street, Suite 1100
                                      Orlando, FL 32801

Douglas W. Neway, Chapter 13 Trustee
Post Office Box 4308
Jacksonville, FL 32201

and all parties on the attached mailing matrix.

                                        */s/ Jacob A. Brown*_____
                                        Attorney

50565022;1

Label Matrix for local noticing
113A-3
Case 3:19-bk-03255-JAF
Middle District of Florida
Jacksonville
Wed Nov  6 16:28:28 EST 2019

Home Point Financial Corporation
c/o D. Anthony Sottile
394 Wards Corner Rd., Ste. 180
Loveland, OH 45140-8362

Law Offices of William Wichmann, P.A.
c/o Jason A. Burgess
1855 Mayport Road
Atlantic Beach, FL 32233-1919

Joan Babette Silverman
7000 SE 123rd Place
Belleview, FL 34420-4529

Robert Lee Silverman
7000 SE 123rd Place
Belleview, FL 34420-4529

Aaron Cohen, 7 Trustee
Estate of Joan Silverman
P.O. Box 4218
Jacksonville, FL 32201-4218

Aaron R. Cohen, Chapter 7 Trustee
c/o Jacob A. Brown, Esq.
Akerman LLP
50 N. Laura St., Suite 3100
Jacksonville, FL 32202-3659

(p)AMERICAN HONDA FINANCE
P O BOX 168088
IRVING TX 75016-8088

CREDIT FIRST NA
PO BOX 818011
CLEVELAND, OH 44181-8011

Capio Partners Llc
Attn: Bankruptcy
Po Box 3498
Sherman, TX 75091-3498

Capital One
Attn: Bankruptcy
Po Box 30285
Salt Lake City, UT 84130-0285

Capital One Bank (USA), N.A.
by American InfoSource as agent
PO Box 71083
Charlotte, NC  28272-1083

Citibank
Attn: Recovery/Centralized Bankruptcy
Po Box 790034
St Louis, MO 63179-0034

Citibank, N.A.
5800 S Corporate Pl
Sioux Falls, SD  57108-5027

Citibank/The Home Depot
Attn: Recovery/Centralized Bankruptcy
Po Box 790034
St Louis, MO 63179-0034

Comenity Bank/Kay Jewelers
Attn: Bankruptcy Dept
Po Box 182125
Columbus, OH 43218-2125

Comenity Bank/Victoria Secret
Attn: Bankruptcy
Po Box 182125
Columbus, OH 43218-2125

Comenity Bank/beallsol
Attn: Bankruptcy
Po Box 182125
Columbus, OH 43218-2125

Commonwealth Financial Systems
Attn: Bankruptcy
245 Main Street
Dickson City, PA 18519-1641

Credit First National Association
Attn: Bankruptcy
Po Box 81315
Cleveland, OH 44181-0315

Credit One Bank
Attn: Bankruptcy Department
Po Box 98873
Las Vegas, NV 89193-8873

Discover Bank
Discover Products Inc
PO Box 3025
New Albany, OH  43054-3025

(p)DISCOVER FINANCIAL SERVICES LLC
PO BOX 3025
NEW ALBANY OH 43054-3025

Florida Dept. of Revenue
Bankruptcy Unit
P.O. Box 6668
Tallahassee, FL 32314-6668

Home Point Financial Corp
Attn: Correspondence Dept
11511 Luna Road; Suite 200
Farmers Branch, TX 75234-6451

Home Point Financial Corporation
11511 Luna Road, Suite 300
Farmers Branch, TX 75234-6451

Internal Revenue Service
PO Box 7346
Philadelphia, PA  19101-7346

Jacob A. Brown, Esq.
50 N. Laura St.
#3100
Jacksonville, FL 32202-3659

(p)JEFFERSON CAPITAL SYSTEMS LLC
PO BOX 7999
SAINT CLOUD MN 56302-7999

LVNV Funding, LLC
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

LendingClub
Attn: Bankruptcy
595 Market St, Ste 200
San Francisco, CA 94105-2807

M J Altman Companies
Attn: Bankruptcy
205 S Magnolia Ave
Ocala, FL 34471-1157

MERRICK BANK
Resurgent Capital Services
PO Box 10368
Greenville, SC 29603-0368

Marion County Tax Collector
P.O. Box 970
Ocala FL 34478-0970

Medicredit Inc.
Attn: Bankruptcy Department
Po Box 1629
Maryland Heights, MO 63043-0629

Merrick Bank/CardWorks
Attn: Bankruptcy
Po Box 9201
Old Bethpage, NY 11804-9001

National Surgical Center
Attn #12395C
P.O. Box 14000
Belfast, ME 04915-4033

Natiowide Recovery Service
Attn: Bankruptcy
Po Box 8005
Cleveland, TN 37320-8005

Ocala Regional Medical Center
Resurgent Capital Services
PO Box 1927
Greenville, SC 29602-1927

(p)PHOENIX FINANCIAL SERVICES LLC
PO BOX 361450
INDIANAPOLIS IN 46236-1450

(p)PORTFOLIO RECOVERY ASSOCIATES LLC
PO BOX 41067
NORFOLK VA 23541-1067

Quantum3 Group LLC as agent for
CF Medical LLC
PO Box 788
Kirkland, WA  98083-0788

Sterling Jewelers, Inc.
Attn: Bankruptcy
Po Box 1799
Akron, OH 44309-1799

Syncb/ccdstr
Attn: Bankruptcy
Po Box 965060
Orlando, FL 32896-5060

Synchrony Bank/ JC Penneys
Attn: Bankruptcy
Po Box 956060
Orlando, FL 32896-0001

Synchrony Bank/Lowes
Attn:  Bankruptcy
Po Box 965060
Orlando, FL 32896-5060

Synchrony Bank/Walmart
Attn:  Bankruptcy
Po Box 965060
Orlando, FL 32896-5060

Synchrony/City Furniture
Attn: Bankruptcy
Po Box 965004
Orlando, FL 32896-5004

United Collection Service, Inc.
Attn: Bankruptcy
Po Box 953638
Lake Mary, FL 32795-3638

United States Attorney
300 North Hogan St Suite 700
Jacksonville, FL 32202-4204

(p)W S BADCOCK CORPORATION
POST OFFICE BOX 724
MULBERRY FL 33860-0724

Wells Fargo Bank NA
Attn: Bankruptcy
1 Home Campus Mac X2303-01a
Des Moines, IA 50328-0001

Wells Fargo Bank, N.A., Wells Fargo Card Ser
PO Box 10438, MAC F8235-02F
Des Moines, IA  50306-0438

William J. Wichmann and the
Law Offices of William Wichmann, P.A.
c/o Jason A. Burgess, Esq.
1855 Mayport Road
Atlantic Beach, Florida 32233-1919

Bryan K. Mickler +
Mickler & Mickler
5452 Arlington Expressway
Jacksonville, FL 32211-6860

Jacob A. Brown +
Akerman LLP
50 North Laura Street
Suite 3100
Jacksonville, FL 32202-3659

Marsha M Brown +
Douglas W. Neway, Chapter 13 Trustee
Post Office Box 4308
Jacksonville, FL 32201-4308

United States Trustee - JAX 13/7 7+
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801-2210

Douglas W Neway +
Post Office Box 4308
Jacksonville, FL 32201-4308

Jason A Burgess +
The Law Offices of Jason A. Burgess, LLC
1855 Mayport Road
Atlantic Beach, FL 32233-1919

Angela M Scott +
The Law Office of Jason A Burgess
1855 Mayport Road
Atlantic Beach, FL 32233-1919

D Anthony Sottile +
Sottile & Barile, LLC
394 Wards Corner Rd
Suite 180
Loveland, OH 45140-8362

Note: Entries with a '+' at the end of the
name have an email address on file in CMECF

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

American Honda Finance
Attn: Bankruptcy
Po Box 168088
Irving, TX 75016

Discover Financial
Attn: Bankruptcy Department
Po Box 15316
Wilmington, DE 19850

Jefferson Capital Systems LLC
Po Box 7999
Saint Cloud Mn 56302-9617

Phoenix Financial Services. Llc
Attn: Bankruptcy
Po Box 361450
Indianapolis, IN 46236

Portfolio Recovery Associates, LLC
POB 41067
Norfolk VA 23541

W.S. Badcock Corporation
Attn: Bankruptcy
Po Box 497
Mulberry, FL 33860

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Aaron R. Cohen, court-appointed Chapter 7

(u)Jerry A. Funk
Jacksonville

(d)Douglas W Neway +
Post Office Box 4308
Jacksonville, FL 32201-4308

End of Label Matrix
Mailable recipients    62
Bypassed recipients     3
Total                  65

# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
**www.flmb.uscourts.gov**

In re:

ROBERT LEE SILVERMAN and                    Case No.: 3:19-bk-03255-JAF
JOAN BABETTE SILVERMAN,

                                            Chapter 13

              Debtors.
_____/

## ORDER APPROVING SETTLEMENT AGREEMENT

THIS CASE came before the Court upon the Motion (the "Motion")[1] (Doc. _____) of Aaron R. Cohen, Chapter 7 Trustee, for entry of an Order approving the terms of the Settlement Agreement by and among the Chapter 7 Trustee, the Debtors, Joan B. Silverman and Robert Silverman.  There being no objection to the Motion after proper notice to interested parties pursuant to Local Bankruptcy Rule 2002-4 on November 6, 2019, it is

**ORDERED**:

1.      The Motion is GRANTED.

2.      The Settlement Agreement is approved and is fully enforceable in all respects.

---

[1] Defined terms from the Motion are incorporated by reference herein.

50565127;1

3.      The Silvermans shall execute and deliver the Note and Mortgage to the Chapter 7 Trustee within five (5) business days of the entry of this Order.

4.      The Note and Mortgage may be sold and assigned by the Chapter 7 Trustee.

5.      Upon the Chapter 7 Trustee's receipt of the original, executed Note and Mortgage from the Silvermans, the Chapter 7 Trustee shall record a release of the Notice of Interest in the Public Records of Marion County, Florida.

6.      Within twenty-one (21) days after entry of an order approving this Settlement Agreement, the Chapter 7 Trustee shall withdraw his Motion from Relief from Automatic Stay (Doc. 18) and the Debtors shall withdraw their Motion to Avoid Judicial Lien (Doc. 21) in the Chapter 13 Bankruptcy Case.

7.      The Settlement Payment shall be property of the Chapter 7 bankruptcy estate, free and clear of all liens, claims, and encumbrances, and the Chapter 7 Trustee shall distribute the Settlement Payment in accordance with the provisions of Section 726 of the Bankruptcy Code.

8.      Thirty (30) days after entry of this Order, this Chapter 13 case shall be converted to a Chapter 7 case and the Clerk of Court shall prepare and serve the appropriate notices to creditors and the Debtors of such conversion.

Attorney Jacob A. Brown is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this order.

50565127;1

# Exhibit B

**PROMISSORY NOTE**

$20,000.00                                                                      December [__], 2019
                                                                                Jacksonville, Florida

FOR VALUE RECEIVED AND ACKNOWLEDGED, the undersigned, **JOAN SILVERMAN AND ROBERT SILVERMAN,** wife and husband (each **"Joan"** and **"Robert"** respectively, and collectively, the **"Obligor"**), hereby promises to pay to the order of **AARON R. COHEN,** as Chapter 7 Trustee, in the bankruptcy case styled *In re: Joan B. Silverman,* Bankruptcy Case No: 3:10-bk-10718-JAF, pending before the United States Bankruptcy Court for the Middle District of Florida (Jacksonville Division) (hereinafter called **"Payee,"** which term shall include any subsequent holder hereof), at Aaron R. Cohen, Chapter 7 Trustee, P.O. Box 4218, Jacksonville, Florida 32201-4218 or at such other place as Payee may designate in writing from time to time, in legal tender of the United States of America, the principal sum of TWENTY THOUSAND AND NO/100 DOLLARS ($20,000.00), or so much thereof as may be advanced hereunder or under any loan agreement executed in connection herewith, together with interest on the unpaid balance outstanding at the rate provided below.

This Promissory Note (this "**Note**") shall be governed by the following provisions:

1.        Interest. Interest on this Note shall accrue on the outstanding principal balance of this Note at the rate of FIVE PERCENT (5.0%) per annum. After an Event of Default as defined below, interest shall accrue at the Default Rate defined below. All interest due on this Note shall be calculated on the basis of a 365 day year, and paid for on the basis of the actual number of days elapsed.

2.        Payments. Principal and interest shall become due and payable on the dates and in the amounts as follows, and each payment shall be applied first to costs and fees, then to accrued and unpaid interest on the unpaid principal balance due under this Note, with the remainder of each payment being applied to the outstanding principal balance:

(a)        Commencing on [January 1], 2020, and continuing on the first (1ˢᵗ) day of each and every calendar month thereafter through and including [December 1], 2030 (the "**Maturity Date**"), Obligor shall pay to Payee a payment of principal and interest equal to TWO HUNDRED TWELVE AND 13/100 DOLLARS ($212.13); and

(b)        The entire unpaid principal balance, together with accrued and unpaid interest, late fees, and all other amounts payable hereunder shall be due and payable to Payee on or before the Maturity Date.

3.        Prepayment. Obligor shall be entitled to prepay this Note, in whole or in part, without penalty, at any time before the Maturity Date. All payments hereunder shall be applied first to costs and fees, then to accrued and unpaid interest on the unpaid principal balance due under this Note, with the remainder of each payment being applied to the outstanding principal balance. Any prepayment in part shall not affect, decrease, vary or postpone the duty of Obligor to pay all obligations when due as set forth in this Note, and such prepayment shall not affect or impair the right of Payee to pursue all remedies available to it hereunder, or under the other Obligation Documents.

4.        Late Fee. Obligor shall pay a late fee of five cents ($0.05) on each dollar ($1.00) on any monthly installment that is delinquent for more than fifteen (15) days. The agreement to pay a late fee shall not be construed to give rise to a grace period or in any way extend or alter the due dates of payments under this Note. The late fee is not a penalty, but liquidated damages to defray administrative and related expenses incurred by Payee in handling and processing such delinquent payment and to compensate Payee for the loss of use of such delinquent payment. The late fee shall be immediately due and payable and shall be paid by Obligor to Payee without notice or demand.

50502915;4

5.      Returned Checks. Any payment made via check returned unpaid shall not be deemed a payment unless and until cash replacing said payment is received by Payee. If any payment is made via check that is returned unpaid for any reason, a charge of five percent (5%) of the amount of the check or the highest amount allowed by law, whichever is less, shall be imposed on each such payment, and Obligor, at the option of Payee, shall make all future payments by money order or certified bank check. The charge imposed on Obligor for returned checks is not a penalty, but liquidated damages to defray administrative and related expenses due to Payee's processing and handling of such returned check. The returned check charge shall be immediately due and payable and shall be paid by Obligor to Payee without notice or demand. This provision for a returned check charge is not and shall not be deemed a grace period, and Payee has no obligation to accept a late payment.

6.      Time is of the Essence. Time is of the essence of this Note.

7.      Security; Obligation Documents.

(a)      Security. This Note is secured by, among other things, that certain Mortgage dated of even date herewith, granted by Obligor in favor of Payee, encumbering certain real and personal property of Obligor located in Marion County, Florida (the "**Mortgaged Property**"), to be recorded in the Official Public Records of Marion County, Florida (the "**Mortgage**"). The Mortgage is incorporated herein by reference hereto, and this Note is entitled to the benefits and protections of the Mortgage.

(b)      Intentionally Left Blank.

(c)      Obligation Documents. This Promissory Note was approved by the bankruptcy court in the bankruptcy case styled above pursuant to that certain [Order Approving Settlement Agreement dated _____]. All of the instruments or documents evidencing or securing the obligations of Obligor to Payee evidenced by this Note and evidenced in connection with bankruptcy case styled above (the "**Obligations**") or executed in connection with the Obligations, including, but not limited to, this Note, the Mortgage, and any other documents, certifications, affidavits, guaranties, agreements, UCCs, or any other instruments or papers executed by Obligor, Payee, or any guarantor or other party in connection with the Obligations, or as security for the payment of the Obligations, or to perfect or continue perfection of Payee's liens securing the Obligations executed in connection with the Obligations, or any documents approved by the bankruptcy court in the bankruptcy case styled above, together with all modifications and amendments thereto, are collectively referred to herein as the "**Obligation Documents**." The terms and conditions of the Obligation Documents are incorporated herein by reference and made a part hereof to the same extent and with the same force and effect as if fully set forth herein.

8.      Default. Any of the following events shall be considered an "**Event of Default**":

(a)      If any payment as set forth herein is not made in full on or before the date such payment is due and payable;

(b)      Any default under the terms and conditions of any of the Obligation Documents provided such default is not cured within the applicable cure period, if any;

(c)      Any default under any other agreement between Payee and Obligor or between Payee and any endorsers or Guarantors (defined below) of this Note, which default is not cured after any applicable notice and/or cure period;

(d)      Any application or petition filed after the date hereof by or against Obligor or any person who has guaranteed the payment or performance of this Note (each a "**Guarantor**," and collectively, the "**Guarantors**") in connection with any bankruptcy, reorganization, compromise, arrangement, insolvency, readjustment of debt, dissolution, liquidation or similar proceeding (which, in the case of an involuntary petition, is not dismissed or stayed within ninety (90) days from the date of filing same) or if Obligor or any

50502915;4

Guarantor acknowledges an inability to pay its debts as and when they become due or otherwise fails to pay its debts as and when they become due;

    (e)  The death or dissolution, as applicable, of any Obligor, any Guarantor, or any other endorser or guarantor of this Note;

    (f)  If at any time any material representation or warranty made by Obligor or by any Guarantor in the Obligation Documents is determined to be incorrect or misleading; or

    (g)  If Obligor or any Guarantor conceals, removes, or permits to be concealed or removed, any part of its, his or her properties, with intent to hinder, delay or defraud its, his or her creditors or any of them, or makes or suffers a transfer of any of its, his or her properties which may be fraudulent under any bankruptcy, fraudulent conveyance or similar law, or makes a general assignment for the benefit of creditors, or if a receiver, trustee, custodian or similar official is appointed for Obligor or any Guarantor or takes possession of any assets of Obligor or any Guarantor, or if any insolvency proceedings or other proceedings for the dissolution or liquidation of Obligor or any Guarantor are instituted by or against Obligor or any Guarantor (which, in the case of an involuntary proceeding, is not dismissed or stayed within ninety (90) days from the date of filing same).

    9.  <u>Remedies</u>. If any Event of Default, or situation which with notice or passage of time would constitute an Event of Default, shall occur, Payee may without prior notice to Obligor, declare the entire outstanding principal balance of this Note, all interest thereon, and all other amounts payable under this Note, or under any other Obligation Documents, to be forthwith due and payable. Thereupon, this Note, all such interest and all such amounts shall become and be forthwith due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived by Obligor, and Payee may exercise any and all other rights available to it under applicable law or the Obligation Documents, each of which remedies shall be cumulative and concurrent, and may be pursued singly, successively or together, at the sole discretion of Payee and may be exercised as often as occasion therefor shall arise. Forbearance to exercise this right with respect to any failure or breach of Obligor shall not constitute a waiver, or limit Payee's remedies as to any subsequent failure or breach. Upon the occurrence of any Event of Default, the outstanding principal balance of this Note, and any accrued and unpaid interest and any other sums due hereunder shall bear interest at the highest rate permitted under applicable law (the "**Default Rate**").

    10.  <u>Payments of Costs</u>. Obligor covenants and agrees to pay all and singular the costs, taxes, fees, and expenses of every kind and nature, including Payee's reasonable attorneys' fees (including on appeal and in bankruptcy), documentary stamp taxes, intangible taxes and other excise taxes, and the cost of title evidence, incurred or expended at any time by Payee in the collection of the Obligations evidenced hereby and/or foreclosure of the Mortgage or any other applicable Obligation Documents or otherwise incurred in protecting and preserving the lien of the Mortgage or in enforcing Payee's rights under this Note, the Mortgage, or any other Obligation Documents, or in enforcing, sustaining, protecting, or defending the lien or priority of the Mortgage or any other applicable Obligation Documents against any and all persons, including, but not limited to, lien claimants or the exercise of the power of eminent domain or other governmental power of any kind. Every such payment made by or on behalf of Payee shall be immediately due and payable by Obligor to Payee and shall bear interest from the date of disbursement by Payee at the rate per annum then applicable under this Note to sums of principal then outstanding and the same, together with such interest, and shall be secured by the lien of the Mortgage. Nothing contained in this Section shall be construed as requiring Payee to advance or spend money for any of the purposes mentioned in this Section.

    11.  <u>Waivers and Consents</u>. Obligor, for themselves, and their respective heirs, legal representatives, successors, and assigns, respectively, hereby expressly (a) waives demand, notice of demand, presentment for payment, notice of nonpayment or dishonor, protest, notice of protest and all other notice, filing of suit and diligence in collecting the amounts due under this Note or under the other Obligation Documents, or in Payee's enforcing any of its rights under any guaranties or other Obligation Documents securing the repayment hereof; (b) agrees to any substitution, addition or release of any collateral or any party

50502915;4

or person primarily or secondarily liable hereon; (c) agrees that Payee shall not be required first to institute any suit, or to exhaust its remedies against Obligor or any other person or party to become liable hereunder, or against any collateral in order to enforce payment of this Note; (d) consents to any extension, rearrangement, renewal or postponement of time or payment of this Note and to any other indulgence with respect hereto without notice, consent or consideration to any of them; and (e) agrees that, notwithstanding the occurrence of any of the foregoing (except with the express written release by Payee of any such person), they shall be and remain jointly and severally, directly and primarily, liable for all sums due under this Note.

12.    <u>Choice of Law; Successors</u>. This Note is to be construed and enforced according to the laws of the State of Florida and shall be binding on the successors and assigns of the parties hereto.

13.    <u>Usury</u>. Notwithstanding any other provision of this Note or any other Obligation Documents, it is expressly agreed that the amounts payable under this Note or under any other Obligation Documents for the payment of interest or any other payment in the nature of or which would be considered as interest or other charge for the use or loan of money shall not exceed the highest contract rate allowed by the laws of the State of Florida, and in the event the provisions of this Note or any other Obligation Documents with respect to the payment of interest or other payments in the nature of or which would be considered as interest or other charge for the use or loan of money would or shall result in exceeding such limitation, then the excess over such limitation shall not be payable and the amount otherwise agreed to have been paid shall be reduced by the excess so that such limitation will not be exceeded, and if any payment actually made shall result in such limitations being exceeded, the amount of the excess shall constitute and be treated as a payment on the principal hereof and shall operate to reduce such principal by the amount of such excess or, if in excess of the principal indebtedness, such excess shall be refunded.

14.    <u>Transfer of Note; Participation</u>. Payee may transfer this Note and deliver to the transferee(s) all or any of the property then held by Payee as security for the indebtedness evidenced by this Note and the transferee(s) shall thereupon become vested with all the powers and rights herein given to Payee with respect thereto; and Payee shall thereafter be forever relieved and fully discharged from any liability or responsibility in the matter, but Payee shall retain all rights and powers hereby given with respect to any property not so transferred. Payee shall provide Obligor with a notice of such transfer by Payee provided that failure to provide such notice shall in no way affect or impair the transfer by Payee or the validity and enforceability of this Note or any of the other Obligation Documents. Payee may grant participations in all or any portion of, and may assign all or any part of Payee's rights under, this Note and the other Obligation Documents. Payee may disclose to any such participant or assignee any and all information held by or known to Payee at any time with respect to any Obligor or Guarantor of this Note.

15.    <u>Miscellaneous</u>. This Note is subject to the following additional provisions:

(a)    <u>Severability</u>. This Note is intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations. If any provision of this Note or the application thereof to any person or circumstances shall, for any reason and to the extent, be invalid or unenforceable, the remainder of this Note and the application of such provision to other persons or circumstances shall not be affected thereby but instead shall be enforced to the greatest extent permitted by law.

(b)    <u>Location, Timing, and Form of Payment</u>. All payments due under this Note are payable on or before 2:00 p.m. on the due date thereof, at the office of Payee specified above, or at such other place as Payee may designate in writing, and shall be credited on the date the funds become available in lawful money of the United States. All sums payable to Payee that are due on a day on which Payee is not open for business shall be paid on the next succeeding business day and such extended time shall be included in the computation of interest.

(c)     <u>Waiver or Amendment of Terms</u>. None of the terms or provisions of this Note may be waived, altered modified or amended except by a written document executed by Payee and Obligor, and then only to the extent specifically recited therein.

(d)     <u>Payee's Waivers and Remedies</u>. The remedies of Payee as provided herein shall be cumulative and concurrent, and may be pursued singly, successively or together, at the sole discretion of Payee and may be exercised as often as occasion therefor shall arise. No act of omission or commission of Payee, including specifically any failure to exercise any right, remedy or recourse, shall be effective, unless set forth in a written document executed by Payee, and then only to the extent specifically recited therein. A waiver or release with reference to one event shall not be construed as continuing, as a bar to, or as a waiver or release of any subsequent right, remedy or recourse as to any subsequent event.

(e)     <u>Joint and Several Liability</u>. If more than one person executes this Note, such persons shall be jointly and severally liable hereunder.

16.     <u>Waiver of Jury Trial</u>. AS A MATERIAL INDUCEMENT FOR PAYEE TO ENTER INTO THE AGREEMENT EVIDENCED HEREBY, PAYEE AND OBLIGOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE, THE OBLIGATIONS EVIDENCED HEREBY, THE OBLIGATION DOCUMENTS, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTION OF EITHER PARTY RELATING TO THE OBLIGATIONS EVIDENCED HEREBY.

*{Signature page follows}*

50502915;4

**OBLIGOR:**

_____

**JOAN SILVERMAN, A MARRIED WOMAN**

_____

**ROBERT SILVERMAN, A MARRIED MAN**

# Exhibit C

**Prepared by & Return to:**
William E. Gibbs, Esq.
Akerman LLP
50 North Laura Street, Suite 3100
Jacksonville, Florida 32202

<u>NOTE TO RECORDING CLERK:</u> THIS MORTGAGE SECURES THAT CERTAIN PROMISSORY NOTE (AS DEFINED BELOW) FROM MORTGAGOR TO MORTGAGEE IN THE ORIGINAL PRINCIPAL AMOUNT OF $20,000.00, ACCORDINGLY, FLORIDA DOCUMENTARY STAMP TAX IN THE AMOUNT OF $<u>70.00</u> AND FLORIDA NON-RECURRING INTANGIBLE TAX IN THE AMOUNT OF $<u>40.00</u> ARE BEING PAID UPON RECORDATION OF THIS INSTRUMENT.

THIS DOCUMENT SERVES AS A FIXTURE FILING UNDER THE
UNIFORM COMMERCIAL CODE - SECURED TRANSACTIONS AS ADOPTED BY THE STATE OF FLORIDA.

## MORTGAGE

THIS MORTGAGE (this "**Mortgage**"), is dated effective as of the [____] day of [_____], 2019 (the "**Effective Date**"), and is made by **JOAN SILVERMAN AND ROBERT SILVERMAN**, wife and husband (each "**Joan**" and "**Robert**" respectively, and collectively, the "**Mortgagors**"), in favor of **AARON R. COHEN**, as Chapter 7 Trustee (the "**Mortgagee**"), in the bankruptcy case styled *In re: Joan B. Silverman,* Bankruptcy Case No: 3:10-bk-10718-JAF (the "**Bankruptcy Case**"), pending before the United States Bankruptcy Court for the Middle District of Florida (Jacksonville Division) (the "**Bankruptcy Court**").

### R E C I T A L S :

A.       Joan is the debtor in the Bankruptcy Case.

B.       Pursuant to the Bankruptcy Case, Mortgagors executed that certain Promissory Note in favor of Mortgagee dated December [___], 2019 (the "**Promissory Note**").

C.       The Promissory Note and this Mortgage were approved by the Bankruptcy Court pursuant to that certain [Order Approving Settlement Agreement] dated [_____] [__], 2019 (the "**Approval Order**"), and the Promissory Note, the Approval Order, and other orders entered by the Bankruptcy Court are collectively referred to herein as the "**Court Documents**."

D.       Pursuant to the Promissory Note, Mortgagors shall pay the Mortgagee the original principal amount of $20,000.00 (the "**Settlement Payment**"), and the parties agreed to enter into this Mortgage to secure the Settlement Payment.

E.       The Court Documents, this Mortgage, and any other documents, certifications, affidavits, guaranties, agreements, UCCs, or any other instruments or papers executed by the Mortgagors, Mortgagee, or any borrower, guarantor, or other party in connection with the Promissory Note, or as security for the payment of the Settlement Payment, or to perfect or continue perfection of Mortgagee's liens securing the Settlement Payment, together with all modifications and amendments thereto, are collectively referred to herein as the "**Transaction Documents**."

F.       Both Mortgagors acknowledge that both Mortgagors will benefit from this Mortgage, the Transaction Documents, and the transactions relating thereto and that Mortgagee would not agree to such transactions with either Mortgagor unless both Mortgagors execute and deliver this Mortgage to Mortgagee.

49515863;5

**NOW, THEREFORE,** to secure the payment and performance by Mortgagors of their obligations (the "**Obligations**") now existing or hereafter arising under the Promissory Note, and any of the other Transaction Documents, and in order to charge the properties, interests and rights hereinafter described with such payment and performance and for and in consideration of the sum of TEN and NO/100 DOLLARS ($10.00) and other good and valuable consideration, the **MORTGAGORS DO BY THESE PRESENTS HEREBY MORTGAGE, GRANT, BARGAIN, TRANSFER, ALIEN, REMISE, ASSIGN, HYPOTHECATE, DEPOSIT, PLEDGE, SET OVER, CONFIRM, CONVEY AND WARRANT UNTO MORTGAGEE, ITS SUCCESSORS AND ASSIGNS,** a security interest in all of Mortgagors' estate, right, title, and interest now owned or hereafter acquired in and to the following (all of such real, personal and mixed property herein described, whether affixed or annexed or not, and all rights hereby conveyed and mortgaged are intended so to be and are to be deemed included in the term the "**Mortgaged Property**" as used herein):

      (a)     All of all those certain pieces, parcels or tracts of land, of which Mortgagors are now seized and possessed and in actual possession, situate in Marion County, Florida, more particularly described on **Exhibit A** attached hereto and incorporated herein (the "**Land**"), to have and to hold the same, together with all rights, privileges, tenements, hereditaments, rights-of-way, easements, appendages, timber, crops, oil, gas, and mineral rights, projections, appurtenances, water rights (including riparian and littoral rights), streets, ways, alleys, strips and gores of land now or hereafter in any way belonging to, adjoining, appurtenant to, crossing, or pertaining to the Land;

      (b)     All buildings, betterments, structures, improvements, build-outs and fixtures of any nature now or hereafter constructed or located, in whole or in part, on the Land, regardless of whether physically affixed thereto or now or hereafter severed or capable of severance from the Land (collectively, the "**Improvements**");

This Mortgage constitutes a security agreement within the meaning of, and shall create a security interest under, the Uniform Commercial Code - Secured Transactions as adopted by the State of Florida, as in effect from time to time, or under the Uniform Commercial Code in force from time to time, in any other state to the extent the same is applicable law with respect to the fixtures and other personal property included in the Mortgaged Property and all proceeds and products thereof, and all supporting obligations ancillary to or arising in any way in connection therewith (collectively, the "**Personal Property**"). A carbon, photographic or other reproduction of this Mortgage or of any financing statement shall be sufficient as a financing statement. Mortgagors' principal place of residence, as applicable, and Mortgagee's address is set forth in Section 29 below. Mortgagors shall execute and deliver to Mortgagee, in form and substance satisfactory to Mortgagee, such financing statements, continuation statements and such further assurances as Mortgagee may from time to time consider reasonably necessary to create, perfect, preserve and maintain in full force and effect Mortgagee's lien upon the Personal Property. Mortgagee, at the expense of Mortgagors, may cause such statements and assurances to be recorded and re-recorded, filed and re-filed, in the name(s) of Mortgagors, and Mortgagors hereby constitute and irrevocably appoint Mortgagee their true and lawful attorney-in-fact, which appointment is coupled with an interest, with full power of substitution, and empowers such attorney or attorneys in the name(s) of Mortgagors, but at the option of such attorney-in-fact, to execute and file any and all financing statements. In addition to the foregoing, Mortgagors hereby authorize Mortgagee at any time and from time to time to file any initial financing statements, amendments thereto and continuation statements with or without signature(s) of Mortgagors as authorized by applicable law, as applicable to the Mortgaged Property. For purposes of such filings, Mortgagors agree to furnish any information requested by Mortgagee promptly upon request of Mortgagee. Mortgagors also ratify their authorization for Mortgagee to have filed any such initial financing statements, amendments thereto or continuation statements if filed prior to the date of this Mortgage. Mortgagors hereby irrevocably constitute and appoint Mortgagee and any officer or agent of Mortgagee, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of Mortgagors or in Mortgagors' own name(s) to execute in Mortgagors' name(s) any such documents and to otherwise carry out the purposes of this Section, to the extent that Mortgagors' authorization above is not sufficient. To the extent permitted by law, Mortgagors hereby ratify all acts such attorneys-in-fact shall lawfully do, have done in the past or shall cause to be done in the future by virtue hereof. This power of attorney is a power coupled with an interest and shall be irrevocable.

The parties intend that this Mortgage shall continue in full force and effect until satisfied by a written satisfaction executed and delivered by Mortgagee to Mortgagors after payment in full of all Obligations. The lien of this Mortgage shall secure all Obligations as more fully set forth herein together with any future advances or other extensions of credit in connection with the Promissory Note.

Mortgagors specifically agree as follows:

1.    Recitals; Defined Terms. The parties agree that the foregoing Recitals are true and correct and incorporated herein by this reference. All capitalized terms not otherwise defined in this Mortgage shall have the meaning ascribed to such terms in the Transaction Documents, as applicable.

2.    Compliance with the Promissory Note and this Mortgage and Warranty of Title. Mortgagors shall comply with all provisions hereof and of the Promissory Note, and of every other instrument securing the Promissory Note, and Mortgagors will promptly pay to Mortgagee the principal with interest thereon and all other sums required to be paid by Mortgagors under the Promissory Note, this Mortgage, and all other instruments securing the Promissory Note. Mortgagors covenant and warrant that: (a) Mortgagors are indefeasibly seized of the Mortgaged Property; (b) the Mortgaged Property is not subject to any liens or encumbrances, other than liens for taxes which are not yet due, and that certain Mortgage, from Joan Silverman and Robert Silverman, wife and husband, as mortgagor, to HOME POINT FINANCIAL CORPORATION, as mortgagee, dated February 25, 2019, and recorded in the Official Public Records of Marion County, Florida, at Book 6920, Page 605, which is superior to the lien of this Mortgage; (c) Mortgagors have lawful authority to convey, mortgage and encumber the Mortgaged Property; (d) Mortgagors will defend title to the Mortgaged Property against the claims of all persons whomsoever; and (e) each Mortgagor will provide such further assurances as may be necessary, convenient, or otherwise required to perfect Mortgagee's lien in the Mortgaged Property created, or intended to be created by this Mortgage.

3.    Payment of Taxes and Liens.

(a)    Mortgagors shall pay promptly, when due, and shall promptly deliver to Mortgagee receipts therefor, all taxes, assessments, rates, dues, charges, fees, impositions, obligations and encumbrances of every kind whatsoever now or hereafter imposed, levied or assessed upon or against the Mortgaged Property or any part thereof, or upon or against this Mortgage or the Obligations or other sums secured hereby, or upon or against the interest of Mortgagee in the Mortgaged Property, as well as all income taxes, assessments and other governmental charges levied or imposed by any taxing authority upon or against Mortgagors, the Mortgaged Property or any part thereof and any charge which, if unpaid, would become a lien or charge upon the Mortgaged Property.

(b)    Mortgagors shall not permit any mortgage (other than this Mortgage and the mortgage disclosed in Section 2 above), mechanics', laborer's, materialmen's, statutory or other lien to be created or to remain a lien upon any of the Mortgaged Property.

(c)    Mortgagors shall promptly pay all yearly taxes, assessments, and other similar charges against the Mortgaged Property as they become due (before any interest attaches or any penalty is incurred), and shall deliver written proof of such payment to Mortgagee within thirty (30) days after the due date. If Mortgagors shall fail to pay any such taxes, assessments, insurance premiums, or other similar charges as required pursuant to the terms of this Mortgage, upon demand by Mortgagee, Mortgagors shall deliver to Mortgagee such monies as are required to pay such taxes, assessments, insurance premiums, and other similar charges, and Mortgagee may require that Mortgagors make monthly deposits with Mortgagee for such taxes, assessments, insurance premiums, or other similar charges due on the Mortgaged Property (as based on prior tax years) in an amount equal to the total amount of such taxes, assessments, insurance premiums, or other similar charges due on the Mortgaged Property, divided by the number of months to elapse before one month prior to the date when such taxes, assessments, insurance premiums, or other similar charges will become delinquent. Such deposits: (i) shall be used, subject to the provisions of this Section, for the payment of the taxes, assessments, insurance premiums, or other similar charges on the Mortgaged Property next due and

49515863;5

payable when they become due; (ii) may be commingled with other funds of Mortgagee, and Mortgagee shall not be required to establish a separate account for such deposits, and (iii) may be applied by Mortgagee to any amounts owed by Mortgagors to Mortgagee in the Event of Default under this Mortgage or the Promissory Note. All such deposits shall be applied by Mortgagee, provided no Event of Default has occurred and is continuing, to the payment of taxes, assessments, insurance premiums, or other similar charges due on the Mortgaged Property. Following an Event of Default, Mortgagee may apply such deposits to the payment of the amounts owed by Mortgagors to Mortgagee under the Promissory Note, in whatever order Mortgagee elects in Mortgagee's sole discretion. Payments shall be made in the fiscal year designated by Mortgagee, provided sufficient funds are available and such taxes, assessments, insurance premiums, or other similar charges are not delinquent. If the sums so deposited are insufficient to pay any such amounts for any period when the same shall become due and payable, Mortgagors shall on demand deposit such additional funds as may be necessary to pay such amounts in full. If the sums so deposited exceed the amount required to pay taxes, assessments, insurance premiums, or other similar charges for any year, the excess shall be credited to a subsequent deposit for such purposes.

4.      Insurance. Mortgagors will insure and keep insured as may be required by Mortgagee from time to time the Mortgaged Property against loss or damage by fire, and/or other casualty, in such form, such amounts, and in such company or companies as shall be satisfactory to Mortgagee, the loss, if any, to be payable to Mortgagee as its interest may appear at the time of the loss. Mortgagors will require any contractors improving the Land to maintain builder's liability and risk insurance in amounts approved by Mortgagee in its sole discretion. In addition to other insurance coverage, if the property is located in a government managed flood area where participation in a Federal Flood Insurance Program is required, Mortgagors agree that upon receipt of notification from Mortgagee and within the time period established by Mortgagee, Mortgagors will obtain and maintain flood insurance in such amount as Mortgagee requires on all buildings, improvements, and fixtures now existing or hereafter erected, placed or maintained on or in the lands described in this Mortgage, together with all other personal property securing Mortgagors' Obligations to Mortgagee and maintained in or on such buildings, improvements and mobile home(s), until the loans, future advances and all other indebtedness secured by such property and this Mortgage are fully paid. Mortgagee may require Mortgagors to obtain and maintain such flood insurance at Mortgagee's sole discretion until the Obligations of Mortgagors secured by the Mortgaged Property are fully paid. Mortgagors further agree to pay Mortgagee all reasonable fees and costs Mortgagee incurs in determining whether any of the Mortgaged Property is located in an area having special flood hazards including determination fees (of initial and subsequent determination as well as fees for monitoring the flood hazard status of the property during the life of the Promissory Note and this Mortgage), together with the cost of premiums and fees incurred with purchasing flood insurance for Mortgagors, if Mortgagors fail to do so within the time period required by Mortgagee. Any such fees, premiums or costs shall, in Mortgagee's sole discretion, be due and payable on demand or as otherwise provided for in the Promissory Note or in this Mortgage. Mortgagors will deliver to Mortgagee the policy or policies of insurance with mortgage clause attached thereto satisfactory to Mortgagee, and will promptly pay when due all premiums for such insurance. If Mortgagors shall fail to pay any insurance premiums or other costs described in this Section, Mortgagee may require that Mortgagors make monthly deposits with Mortgagee for such insurance premiums or other costs described in this Section in accordance with Section 3(c) above. If any of the Mortgaged Property shall be destroyed or damaged by fire, windstorm, and/or other casualty, and provided there is no Event of Default, the amount received in settlement of the loss or damage may be applied at the option of Mortgagors on such part of Mortgagors' Obligations secured by this Mortgage as Mortgagee may in its sole discretion determine. If any building on the Mortgaged Property so insured shall be destroyed or damaged, the amount received in settlement of the loss or damage, provided there is no Event of Default, may be applied subject to applicable law and at the option of Mortgagors to the reconstruction or repair of the buildings so destroyed or damaged; any portion of the proceeds not so used shall be applied on Mortgagors' Obligations hereby secured in such manner as Mortgagee, in its sole discretion, may determine.

5.      Condemnation. Mortgagee shall be entitled to all compensation, awards, damages, claims and rights of action, together with all proceeds thereof, if all or any part of the Mortgaged Property shall be damaged or taken through condemnation (which term when used herein shall include any damage or taking by any government authority or any other authority lawfully authorized to so damage or take, and any transfer by

4

private sale in lieu thereof). Mortgagee is hereby authorized, at its option, to commence, appear in and prosecute, in its own name or in the name(s) of Mortgagor, any action or proceeding relating to any condemnation, and to settle or compromise any claim in connection therewith. All compensation, awards, damages, claims, rights of action and proceeds derived from or relating to any such condemnation, and any other payments or relief and the right thereto, are hereby assigned by Mortgagors to Mortgagee, who, after deducting therefrom all its expenses including attorneys' fees, may release any monies so received by it without affecting the lien of this Mortgage or may apply the same, in such manner as Mortgagee shall determine, to the reduction of the sums secured hereby. Any balance of such monies then remaining shall be paid to Mortgagors. Mortgagors agree to execute such further assignments of any compensations, awards, damages, claims, rights of action and proceeds as Mortgagee may require.

6.  Care and Use of the Mortgaged Property. Mortgagors shall not cut or remove any material amount of timber, sever, remove or grant any rights in any oil, gas, minerals, lime rock, phosphate, soil or other materials or remove or demolish any building or other property forming a part of the Mortgaged Property without the prior written consent of Mortgagee in Mortgagee's sole discretion. Mortgagors shall not permit, commit or suffer any waste, impairment or deterioration of the Mortgaged Property or any part thereof, and shall keep the same and improvements thereon in good condition and repair. Mortgagors shall notify Mortgagee in writing within five (5) days of any damage or impairment of the Mortgaged Property. Mortgagors shall comply with all laws and regulations applicable to the Mortgaged Property, including, without limitation, all zoning, environmental, land use and toxic or hazardous waste disposal laws. Mortgagors covenant and warrant that all applicable zoning laws, ordinances and regulations affecting the Mortgaged Property permit Mortgagors' current or intended use and occupancy thereof.

7.  Mortgagee's Right to Make Certain Payments. In the event Mortgagors fail to complete any improvements to the Mortgaged Property, pay or discharge the taxes, assessments, levies, liabilities, obligations (including obligations under any leases) or encumbrances affecting the Mortgaged Property, or fails to keep the Mortgaged Property insured or to deliver the policies, premiums paid, or fails to repair the Mortgaged Property as herein agreed, or Mortgagors otherwise default in any covenant herein or in any other document evidencing or securing the Obligations, upon providing Mortgagors with written notice and a ten (10) day period to cure the default, Mortgagee may at its option, without waiving or curing any default by Mortgagors, expend funds to complete such improvements, pay or discharge the taxes, assessments, levies, liabilities, and to pay off or cure any default under, obligations and encumbrances or any part thereof, procure and pay for such insurance or make and pay for such repairs and take such action to preserve the value of the Mortgaged Property and otherwise perform any action required to be performed by Mortgagors. Mortgagee shall have no obligation on its part to determine the validity or necessity of any payments thereof and any such payment shall not waive or affect any option, lien, equity or right of Mortgagee under or by virtue of this Mortgage. The full amount of each and every such payment shall be immediately due and payable and shall bear interest from the date thereof until paid at the Default Rate, as defined below, and together with such interest, shall be secured by the lien of this Mortgage. Nothing herein contained shall be construed as requiring Mortgagee to advance or expend monies for any of the purposes mentioned in this Section. No such payments shall be deemed to waive or cure any default hereunder.

8.  Payment of Expenses. Mortgagors shall pay all of the costs, advances, charges and expenses, including attorneys' fees, disbursements and cost of abstracts of title, documentary stamp and intangible personal property taxes (and any penalties or interest with respect thereto) incurred in connection with the Promissory Note and this Mortgage or the enforcement thereof or paid at any time by Mortgagee due to the failure on the part of Mortgagors promptly and fully to perform, comply with and abide by each and every stipulation, agreement, condition and covenant of the Promissory Note and this Mortgage or in the enforcement of Mortgagee's rights hereunder. Without limiting the generality of the foregoing, Mortgagee is specifically authorized to advance funds necessary to complete any construction of improvements on the Mortgaged Property, upon providing Mortgagors with written notice and a ten (10) day period to cure the default. Such costs, charges and expenses shall be immediately due and payable, whether or not there be notice, demand, attempt to collect or suit pending. All such costs, charges and expenses so incurred or paid,

together with such interest, shall be secured by the lien of this Mortgage and any other instrument securing the Obligations. No such payments shall be deemed to waive or cure any default hereunder.

9.      Documentary Stamp Tax and Intangible Tax. Contemporaneously herewith, Mortgagors have executed and delivered to Mortgagee the Promissory Note. The Promissory Note evidences a debt obligation owed by Mortgagors to Mortgagee in the original principal amount of $20,000.00. Mortgagors shall pay all required documentary stamp taxes and intangible personal property taxes due in connection with the Promissory Note, this Mortgage, and any of the other Transaction Documents. If for any reason whatsoever the State of Florida should assess additional documentary stamp taxes, intangible taxes, penalties, interest, or other charges with respect to such existing indebtedness evidenced by the Promissory Note, or with respect to any documentary stamp or intangible tax due in connection with this Mortgage or any of the Transaction Documents, Mortgagors covenant and agree with Mortgagee that upon the demand of Mortgagee, Mortgagors shall immediately pay all such additional documentary stamp taxes, intangible taxes, penalties, interest, or other charges. Mortgagors' covenants in the preceding sentence shall survive any termination, release, or satisfaction of this Mortgage and will be secured by the lien of this Mortgage.

10.     No Transfer or Further Encumbrance. Mortgagors shall not sell, convey, transfer or further encumber any interest in or any part of the Mortgaged Property without the prior written consent of Mortgagee, and any such sale, conveyance, transfer or encumbrance made without Mortgagee's prior written consent may, at Mortgagee's option, be declared null and void by Mortgagee. If any person should, without the prior written consent of Mortgagee, which consent may be given or withheld in Mortgagee's sole and absolute discretion, obtain an interest in all or any part of the Mortgaged Property pursuant to the execution or enforcement of any lien, security interest or other right, whether superior, equal or subordinate to this Mortgage or the lien hereof, such event shall be deemed to be a transfer by Mortgagors and a default hereunder.

11.     After-Acquired Property. The lien of this Mortgage will automatically attach, without further act, to all after acquired property of the same kind as the Mortgaged Property located in or on, or attached to, or used or intended to be used in connection with or in the operation of the Mortgaged Property.

12.     Additional Documents; Further Assurances. At any time and from time to time, upon Mortgagee's request, Mortgagors shall make, execute and deliver or cause to be made, executed and delivered to Mortgagee and, where appropriate, shall cause to be recorded or filed and from time to time thereafter to be re-recorded or re-filed at such time and in such offices and places as shall be deemed desirable by Mortgagee any and all such further deeds, conveyances, mortgages, security agreements, financing statements, assignments of leases, certifications, affidavits, instruments, or other documents as Mortgagee may consider necessary or desirable in order to better assure, mortgage, pledge, assign and confirm unto Mortgagee all and singular the Mortgaged Property and the title thereto, and/or to effectuate, complete, enlarge or perfect, or to continue and preserve the Obligations of Mortgagors under the Promissory Note and this Mortgage, and the lien of this Mortgage as a lien upon all of the Mortgaged Property, whether now owned or hereafter acquired by Mortgagors. Upon any failure by Mortgagors to do so, Mortgagee may make, execute, record, file, re-record, or re-file any and all such mortgages, instruments, certificates and documents for and in the name(s) of Mortgagors, and Mortgagors hereby irrevocably appoint Mortgagee as agent and attorney-in-fact of Mortgagors to do so.

13.     Reappraisals. Notwithstanding any term or provision hereof to the contrary, if at any time and for any reason Mortgagee in its sole discretion determines that the value of the Mortgaged Property may have declined or be less than Mortgagee previously anticipated, within sixty (60) days from Mortgagee's written request to Mortgagors therefor, Mortgagors shall provide to Mortgagee, at Mortgagors' sole cost and expense (or reimburse Mortgagee for Mortgagee's costs and expenses of obtaining), a current appraisal of the Mortgaged Property to be ordered by Mortgagee from an appraiser designated by Mortgagee and in form and content as required by Mortgagee. Notwithstanding the foregoing, for so long as no Event of Default has occurred hereunder, Mortgagee shall not be permitted to require appraisals hereunder more frequently than annually unless required more frequently by any applicable laws, regulations, or requirements. Any such costs

6

or expenses incurred or paid in connection with this Section shall be immediately due and payable by Mortgagors, whether or not there be notice, demand, attempt to collect or suit pending, and such amount due shall bear interest from the date incurred until the date paid by Mortgagors at the Default Rate. All such costs or expenses incurred or paid by Mortgagee, together with such interest, shall be secured by the lien of this Mortgage. Mortgagors shall cooperate fully with any such appraiser and provide all such documents and information as such appraiser may request in connection with such appraiser's performance and preparation of such appraisal. Mortgagors' failure to promptly and fully comply with Mortgagee's requirements under this Section shall, without further notice, constitute an Event of Default under this Mortgage.

14.     <u>Warranties and Representations of Mortgagor</u>. As material inducements to Mortgagee to enter into the transactions contemplated hereby, Mortgagors hereby warrant and represent to Mortgagee as follows:

(a)     <u>Validity of Transaction Documents</u>. That the Transaction Documents are in all respects legal, valid and binding according to their terms and grant to Mortgagee a direct, valid and enforceable lien and security interest in the Mortgaged Property.

(b)     <u>Conflicting Transactions of Mortgagors</u>. That the consummation of the transactions hereby contemplated and the performance of Mortgagors' Obligations under and by virtue of the Transaction Documents will not result, to the best of Mortgagors' knowledge, in any breach of, or constitute a default under any mortgage, security deed, deed of trust, lease, bank loan or credit agreement, corporate charter or bylaws, as applicable, or other instrument to which Mortgagors are a party or by which Mortgagors may be bound or affected.

(c)     <u>Pending Litigation</u>. That there are no actions, suits or proceedings pending or, to the knowledge of Mortgagors, threatened against or affecting Mortgagors which affect any of the Mortgaged Property, or involving the validity or enforceability of any of the Transaction Documents or the priority of the lien thereof, at law or in equity, or before or by any governmental authority, except actions, suits and proceedings which are fully covered by insurance and which, if adversely determined, would not substantially impair Mortgagors' ability to perform each and every one of its respective obligations under and by virtue of the Transaction Documents; and that to Mortgagors' knowledge, Mortgagors are not in default with respect to any order, writ, injunction, decree or demand of any court or any governmental authority.

(d)     <u>Violations of Governmental Law, Ordinances or Regulations</u>. That Mortgagors have no knowledge of any violation or notice of violations of any federal or state law or municipal ordinance or order or requirement of, or agreement with, the county or city or any municipal department or other governmental authority having jurisdiction affecting the Mortgaged Property, which violations in any way relate to or affect the Mortgaged Property.

(e)     <u>Condition of Mortgaged Property</u>. That the Mortgaged Property is not now damaged or impaired as a result of any fire, explosion, accident, flood or other casualty.

(f)     <u>Accuracy of Information</u>. That Mortgagee's commitment to enter into the transactions contemplated hereby is based on the accuracy of Mortgagors' representations and statements. None of the Transaction Documents furnished to Mortgagee contains any untrue statement of a material fact or omits to state a fact material to Mortgagee's decision to enter into the transactions contemplated hereby.

(g)     <u>Continuation and Investigation</u>. That the warranties and representations contained herein shall be and remain true and correct so long as any of Mortgagors' or any guarantor's obligations hereunder have not been satisfied, or so long as part of the Promissory Note shall remain outstanding. All representations, warranties, covenants and agreements made herein or in any certificate or other document delivered to Mortgagee by or on behalf of Mortgagors pursuant to or in connection with any of the Transaction Documents shall be deemed to have been relied upon by Mortgagee notwithstanding any investigation heretofore or hereafter made by Mortgagee or on its behalf.

49515863;5

15.   <u>Environmental Condition of Property</u>.

(a)   Mortgagors hereby warrant and represent to Mortgagee after thorough investigation that:

(i)   the Mortgaged Property is now and at all times hereafter will continue to be in full compliance with all federal, state and local environmental laws and regulations, including but not limited to, the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), Public Law No. 96-510, 94 Stat. 2767, and the Superfund Amendments and Reauthorization Act of 1986 (SARA), Public Law No. 99-499, 100 Stat. 1613; and

(ii)   (A) as of the date hereof there are no hazardous materials, substances, wastes or other environmentally regulated substances (including without limitation, any materials containing asbestos) located on, in or under the Mortgaged Property or used in connection therewith, or (B) Mortgagors have fully disclosed to Mortgagee in writing the existence, extent and nature of any such hazardous material, substance, waste or other environmentally regulated substance, currently present or which Mortgagors are legally authorized and empowered to maintain on, in or under the Mortgaged Property or use in connection therewith, Mortgagors have obtained and will maintain all licenses, permits and approvals required with respect thereto, and is and will remain in full compliance with all of the terms, conditions and requirements of such licenses, permits and approvals. Mortgagors further warrant and represent that they will promptly notify Mortgagee of any change in the environmental condition of the Mortgaged Property or in the nature or extent of any hazardous materials, substances or wastes maintained on, in or under the Mortgaged Property or used in connection therewith, and will transmit to Mortgagee copies of any citations, orders, notices or other material governmental or other communication received with respect to any other hazardous materials, substances, waste or other environmentally regulated substance affecting the Mortgaged Property.

(b)   Mortgagors hereby indemnify and hold harmless Mortgagee from and against any and all damages, penalties, fines, claims, suits, liabilities, costs, judgments and expenses (including attorneys', consultants' or experts' fees) of every kind and nature incurred, suffered by or asserted against Mortgagee as a direct or indirect result of:

(i)   any warranty or representation made by Mortgagors in this Section being or becoming false or untrue in any material respect, or

(ii)   any requirement under the law, regulation or ordinance, local, state or federal, regarding the removal or elimination of any hazardous materials, substances, waste or other environmentally regulated substances.

Mortgagors' obligations hereunder shall not be limited to any extent by the term of the Promissory Note and shall survive any defeasance or repayment of the Obligations or any satisfaction of this Mortgage, and, as to any act or occurrence prior to payment in full and satisfaction of said Promissory Note which gives rise to liability hereunder, shall continue, survive and remain in full force and effect notwithstanding foreclosure of this Mortgage, where Mortgagee is the purchaser at the foreclosure sale, or delivery of a deed in lieu of foreclosure to Mortgagee.

16.   <u>Events of Default</u>. Mortgagors shall be in default under this Mortgage upon the occurrence of any of the following events or conditions, each a "**Default**" or an "**Event of Default**":

(a)   If Mortgagors default in the payment of any principal, interest or other amount under the Promissory Note when the same shall become due, if such default is not cured within any applicable cure period.

(b)     If Mortgagors default under this Mortgage or the Promissory Note, or any other document executed and delivered by either Mortgagor to Mortgagee in connection with this Mortgage or the Promissory Note.

(c)     Failure by Mortgagors to duly keep, perform and observe any other covenant, condition or agreement in this Mortgage for a period of thirty (30) days after Mortgagee gives written notice specifying the failure, provided however, no notice or cure period will be given for covenants which are not subject to cure. In the event Mortgagors commence the cure of a violation under this Subsection within such thirty (30) day period, and such violation is not reasonably capable of being cured within such thirty (30) day period, then no Event of Default shall be deemed to have occurred if Mortgagors are diligently pursuing such cure and complete the cure within sixty (60) days after such notice.

(d)     If Mortgagors or any guarantor or endorser of the Promissory Note: (i) files a voluntary petition in bankruptcy, or (ii) is adjudicated as bankrupt or insolvent, or (iii) files any petition or answer seeking or acquiescing in any reorganization, management, composition, readjustment, liquidation, dissolution or similar relief for itself under any law relating to bankruptcy, insolvency or other relief for debtors, or (iv) seeks, consents to or acquiesces in the appointment of any trustee, receiver, master or liquidator of itself or of all or any part of the Mortgaged Property, or (v) makes any general assignment for the benefit of creditors, or (vi) makes any admission in writing of its inability to pay its debts generally as they become due.

(e)     If: (i) a court of competent jurisdiction enters an order, judgment or decree approving a petition filed against Mortgagors seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief, under any present or future federal, state, or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, which order, judgment or decree remains un-vacated and un-stayed for an aggregate of sixty (60) days whether or not consecutive from the date of entry thereof; or (ii) any trustee, receiver or liquidator of Mortgagors or of any part of the Mortgaged Property is appointed without the prior written consent of Mortgagee, which appointment shall remain un-vacated and un-stayed for an aggregate of sixty (60) days whether or not consecutive.

(f)     Sale, encumbrance, or transfer of any interest by lease, sale, or otherwise of any of the Mortgaged Property, or the making of any levy, seizure, or attachment thereof or thereon, or failing to replace promptly any of the Mortgaged Property that is lost due to theft, damage, destruction, or any other reason.

(g)     Any breach of any warranty or material untruth of any representation of Mortgagors contained in the Promissory Note, this Mortgage, any other Transaction Documents, or any other instrument evidencing or securing the Settlement Payment.

17.     Acceleration. If an Event of Default shall have occurred, Mortgagee may declare all amounts due under the Promissory Note and any interest accrued thereon, and all other sums secured hereby, to be due and payable immediately. Upon such declaration all principal and interest and other sums shall immediately be due and payable without demand or notice, which such notice is expressly waived by Mortgagors.

18.     Remedies After Default.

(a)     If an Event of Default shall have occurred, Mortgagee may exercise any or all of the following rights, remedies and recourses:

(i)     Mortgagee may institute a proceeding, judicial or otherwise, for the complete foreclosure of this Mortgage to the fullest extent permitted by law; or institute a proceeding or proceedings, judicial or otherwise, for the partial foreclosure of this Mortgage, as permitted by applicable law for the portion of the Obligations then due and payable, with this Mortgage then continuing unimpaired and without loss of priority so as to secure the balance of the Obligations. Mortgagee shall have the continuing option to enforce payment of all sums secured by this Mortgage by an action at law or by a suit in equity to foreclose this Mortgage, either or both, concurrently or

otherwise, and one action or suit shall not abate or be a bar to or waiver of Mortgagee's right to institute or maintain the other. In case of a foreclosure sale of all or any part of the Mortgaged Property and of the application of the proceeds of sale to the payment of the sums secured hereby, Mortgagee shall be entitled to enforce payment from Mortgagors of all amounts then remaining due and unpaid and to recover judgment against Mortgagors for any portion thereof remaining unpaid, with interest at the Default Rate.

(ii)    Mortgagee may collect Rents and profits from the Mortgaged Property and apply the monies so received by Mortgagee in such priority as Mortgagee may determine to (A) the payment of the Obligations; (B) the deposits due for taxes and assessments and insurance premiums; (C) the cost of insurance, taxes, assessments and other proper charges upon the Mortgaged Property or any part thereof; and (D) the compensation, expenses and disbursements of the agents, attorneys and other representatives of Mortgagee.

(iii)    Mortgagee may pursue any other remedy available to it hereunder, under the Transaction Documents, at law, or in equity, including, but not limited to taking possession of the Mortgaged Property without notice or hearing to Mortgagee, to the extent permitted by applicable law.

(iv)    Mortgagee shall have the power and authority to institute and maintain any suits and proceedings and make such payments and take such actions as Mortgagee may deem advisable: (A) to prevent any impairment of the Mortgaged Property by any acts which may be unlawful or any violation of this Mortgage; (B) to preserve or protect its interest in the Mortgaged Property by any acts which may be unlawful or any violation of this Mortgage; (C) to preserve or protect its interest in the Mortgaged Property; and (D) to restrain the enforcement of or compliance with any legislation or other governmental enactment rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order might impair the security hereunder or be prejudicial to Mortgagee's interest in the Mortgaged Property.

(b)    Prior to, upon or at any time after, commencement of foreclosure of the lien, security title and security interest provided for herein or any legal proceedings pursuant hereto, Mortgagee may make application to a court of competent jurisdiction for appointment of a receiver of the Mortgaged Property, and Mortgagors agree to consent to the same.

(c)    Mortgagee shall have all rights, remedies and recourses granted in this Mortgage, in any other applicable Transaction Documents, and available at law or equity (including specifically those granted by the Uniform Commercial Code in effect and applicable to the Mortgaged Property) including, without limitation, the right to judicially or non-judicially foreclose, to bring a strict foreclosure action, or to bring an action in any court of competent jurisdiction to foreclose this instrument as a realty mortgage if permitted by applicable law, and, except as limited by applicable law, the same (i) shall be cumulative and concurrent; (ii) may be pursued separately, successively or concurrently against Mortgagors or against all or any portion of the Mortgaged Property, in the sole discretion of Mortgagee; (iii) may be exercised as often as occasion therefor shall arise, it being agreed by Mortgagors that the exercise or failure to exercise any of same shall in no event be construed as a waiver or release thereof or of any other right, remedy or recourse; and (iv) are intended to be, and shall be nonexclusive.

(d)    Mortgagee shall be entitled to receive all costs and expenses of the sale or repossession of the Mortgaged Property including any receiver's fee or commission, if any, title and abstracting charges, attorneys' fees and auctioneer's fees, and all other costs and expenses incurred in exercising its remedies hereunder, whether incurred at pretrial, trial, on appeal, at sale, or in bankruptcy or in any administrative or collection proceeding.

(e)    If an Event of Default shall occur, Mortgagors will use their best efforts to cooperate with Mortgagee and promptly do all things reasonably required of it toward obtaining all necessary authority and permission from any governmental authority or otherwise to accomplish any disposition, abandonment or

10

change in use of the Mortgaged Property (or any portion thereof) as Mortgagee may request in connection with the exercise of its rights and powers hereunder and under this Mortgage, the Promissory Note, or any other applicable Transaction Documents. Without limiting the generality of the foregoing, following an Event of Default and reasonable advance notice to Mortgagors, Mortgagors agree to relocate operations located on the Mortgaged Property to a location off of the Mortgaged Property or to a specific location on the Mortgaged Property as directed by Mortgagee to accommodate the disposition, abandonment, change in use or foreclosure by Mortgagee of any portion thereof, provided that such relocation does not materially violate any legal requirement applicable to Mortgagors or the Mortgaged Property.

19.     No Waiver. No delay or omission of Mortgagee or of any holder of this Mortgage to exercise any right, power or remedy accruing upon any Event of Default shall exhaust or impair any such right, power or remedy or be construed as a waiver of any such Event of Default or constitute acquiescence therein.

20.     Non-Exclusive Remedies. No right, power or remedy conferred upon or reserved to Mortgagee by this Mortgage or by any of the other Transaction Documents is exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power or remedy given hereunder, or now or hereafter existing at law, in equity or by statute.

21.     Application of Payments. Any partial payment made by Mortgagors or any payment made by Mortgagors after the occurrence of an Event of Default may be applied against Mortgagors' Obligations hereby secured in such manner as Mortgagee, in its sole discretion, may determine.

22.     Successors and Assigns Bound. Whenever one of the parties hereto is named or referred to herein, the heirs, personal representatives, successors and assigns of such party shall be included and all covenants and agreements contained in this Mortgage, by or on behalf of Mortgagors or Mortgagee, shall bind and inure to the benefit of their respective heirs, personal representatives, successors and assigns.

23.     Invalid or Unenforceable. In the event that any of the covenants, agreements, terms or provisions contained in this Mortgage or the Promissory Note shall be invalid, illegal or unenforceable in any respect, the validity of the remaining covenants, agreements, terms or provisions contained herein and in the Promissory Note shall be in no way affected, prejudiced or disturbed thereby.

24.     Future Advances. This Mortgage is given to secure not only existing Obligations, but also such future advances, whether such advances are obligatory or are to be made at the option of Mortgagee, or otherwise, as are made to Mortgagors within twenty (20) years from the date hereof, to the same extent as if such future advances were made on the date of the execution of this Mortgage. The total amount of indebtedness that may be so secured may decrease or increase from time to time, but the total unpaid balance so secured at one time shall not exceed two (2) times the face amount of the Promissory Note, plus interest thereon, and any disbursements made for the payment of taxes, levies or insurance on the Mortgaged Property, with interest on such disbursements at the Default Rate as hereinafter defined. Each such additional loan shall be evidenced by a note or other evidence of indebtedness and shall be automatically secured by this Mortgage without the necessity of the note or other evidence of indebtedness identifying such additional loan as part of the indebtedness secured by this Mortgage. Nothing herein contained shall imply any obligation on the part of Mortgagee to make any such additional loan(s).

25.     Obligation of Mortgagors. Mortgagors shall pay the cost of releasing or satisfying this Mortgage of record.

26.     Default Rate. The "**Default Rate**" shall be the default rate as set forth in the Promissory Note. However, at no time shall any interest or charges in the nature of interest be taken, exacted, received or collected which would exceed the maximum rate permitted by law.

27.     Facilities For Handicapped. All improvements now or hereafter included in the Mortgaged Property shall comply with all legal requirements regarding access and facilities for handicapped or disabled

49515863;5

persons, including, without limitation, and to the extent applicable, the following: (a) Part V of the Florida Building Construction Standards Act entitled "Accessibility by Handicapped Persons", Chapter 553, Florida Statutes; (b) the Federal Architectural Barriers Act of 1988 (42 U.S.C. Section 4151, et. seq.); (c) The Fair Housing Amendment Act of 1988 (42 U.S.C. Section 3601, et. seq.); (d) The Americans With Disabilities Act of 1990 (42 U.S.C. Section 12101 et. seq.); and (e) The Rehabilitation Act of 1973 (29 U.S.C. Section 794).

28.    <u>Indemnification</u>. Mortgagors will protect, indemnify and save harmless Mortgagee, its officers, directors, agents, and employees, from and against any and all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including without limitation, reasonable attorneys' fees and expenses) imposed upon, incurred by or asserted against Mortgagee or any of such persons by reason of (a) ownership of any interest in the Mortgaged Property or any part thereof; (b) any accident, injury to or death of person or loss of or damage to property occurring on or about the Mortgaged Property or any part thereof or the adjoining sidewalks, curbs, vaults and vault space, if any, streets or ways; (c) any use, disuse or condition of the Mortgaged Property or any part thereof, or the adjoining sidewalks, curbs, vaults and vault space, if any, or any streets or ways; (d) any failure on the part of Mortgagors to perform or comply with any of the terms hereof or any inaccuracy in any representation or warranty made by Mortgagors herein; (e) any necessity to defend any of the right, title or interest conveyed by this Mortgage; (f) the performance of any labor or services or the furnishing of any materials or other property in respect to the Mortgaged Property or any part thereof; or (g) any subsidence or erosion of any part of the surface of the Mortgaged Property, including any shoreline or any bank of any river, stream, creek, lake, ocean or other water source. If any action, suit or proceeding is brought against Mortgagee, or any of its officers, directors, agents or employees, for any reason, Mortgagors, upon the request of such party, will, at Mortgagors' expense, cause such action, suit or proceeding to be resisted and defended by counsel satisfactory to Mortgagee or such person. Any amounts payable to an indemnified party under this Section which are not paid within ten (10) days after written demand therefor shall bear interest at the Default Rate (as defined above) from the date of such demand, and such amounts, together with such interest, shall be indebtedness secured by this Mortgage. The obligations of Mortgagors under this Section shall survive any defeasance of this Mortgage or repayment of the Obligations or any satisfaction of this Mortgage.

29.    <u>Notices</u>. All notices, requests, consents, claims, demands, waivers and other communications hereunder (each, a "**Notice**") shall be in writing and addressed to the parties at the addresses set forth below (or to such other address that may be designated by the receiving party from time to time in accordance with this Section). Any party may update its notice address herein upon providing five (5) days prior written notice to the other parties hereto. All Notices shall be delivered by one of the following methods: (a) personal delivery, (b) nationally recognized overnight courier (with all fees pre-paid), (c) certified United States Mail, return receipt requested, (d) facsimile (with confirmation of transmission), or (e) e-mail transmission (with any applicable files attached thereto in PDF file format, unless another file format is necessary or required). Notice shall be deemed given on the first to occur of the following: (i) the date it is hand delivered, (ii) the next Business Day after it is picked up by the overnight courier, (iii) the third (3rd) Business Day after it is deposited in the United States mail as provided above, (iv) on the date it is sent by facsimile transmission (with confirmation of transmission), or (v) the date sent by e-mail transmission (provided the sender of the email receives no notification of failed delivery).

Addresses for notices are as follows:

If to Mortgagee:          Aaron R. Cohen, Chapter 7 Trustee
                          P.O. Box 4218
                          Jacksonville, Florida 32201-4218
                          E-mail: acohen60@bellsouth.net

|                    |                                                                                                                                              |
|--------------------|----------------------------------------------------------------------------------------------------------------------------------------------|
| with a copy to:    | Akerman LLP<br>Attn: Jacob Brown<br>50 North Laura Street, Suite 3100<br>Jacksonville, Florida 32202<br>Fax: (904) 798-3730<br>E-mail: jacob.brown@akerman.com |
| If to Mortgagors:  | Joan B. Silverman and Robert Silverman<br>7000 SE 123rd Place<br>Belleview, FL 34420<br>E-mail: [_____] |
| with a copy to:    | Peter C. Blinn, P.A.<br>Attn: Peter C. Blinn<br>1800 SE 17th Street, Building 400<br>Ocala, FL 34471<br>E-mail: bkinfo@peterblinn.com |

30. <u>Waivers by Mortgagors</u>. To the fullest extent permitted by applicable law, Mortgagors hereby irrevocably and unconditionally WAIVE and RELEASE (a) all benefits that might accrue to Mortgagors by virtue of any present or future law exempting the Mortgaged Property from attachment, levy or sale on execution or providing for any appraisement, valuation, homestead exemption, stay of execution, exemption from civil process, redemption or extension of time for payment; (b) except as otherwise provided in this Mortgage, the Promissory Note, and any other applicable Transaction Documents, all notices of any demand, presentment, Event of Default, intent to accelerate or acceleration or the election by Mortgagee, as applicable, to exercise or the actual exercise of any right, remedy or recourse provided for under this Mortgage, the Promissory Note, or any other applicable Transaction Documents; (c) any right to a marshalling of assets or a sale in inverse order of alienation; (d) any restrictions or conditions upon the exercise by Mortgagee of the remedies set forth herein; and (e) rights of redemption.

31. <u>WAIVER OF JURY TRIAL</u>. NO PARTY TO THIS MORTGAGE OR ANY ASSIGNEE, SUCCESSOR, HEIR OR LEGAL REPRESENTATIVE OF A PARTY SHALL SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM OR ANY OTHER LITIGATION PROCEDURE BASED UPON OR ARISING OUT OF THIS MORTGAGE, ANY RELATED AGREEMENT OR INSTRUMENT, ANY OTHER COLLATERAL FOR THE INDEBTEDNESS SECURED HEREBY OR THE DEALINGS OR THE RELATIONSHIP BETWEEN OR AMONG THE PARTIES HERETO OR THERETO, OR ANY OF THEM. NO PARTY WILL SEEK TO CONSOLIDATE ANY SUCH ACTION, IN WHICH A JURY TRIAL HAS BEEN WAIVED, WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. THE PROVISIONS OF THIS SECTION HAVE BEEN FULLY NEGOTIATED BY THE PARTIES HERETO, AND THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS. NO PARTY HAS IN ANY WAY AGREED WITH OR REPRESENTED TO ANY OTHER PARTY THAT THE PROVISIONS OF THIS SECTION WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

32. <u>Authority</u>. The individual or individuals executing this Mortgage hereby represent and warrant that they are empowered and duly authorized to so execute this Mortgage on behalf of the party or parties they represent.

33. <u>Rules of Construction</u>. (a) When appropriate based on the identity of the parties or other circumstances, the masculine gender includes the feminine or neuter or both, and the singular number includes the plural; (b) the term "**Mortgaged Property**" means all and any part of or interest in the Mortgaged Property; (c) all Section headings herein are for convenience of reference only, are not a part of this Mortgage, and shall be disregarded in the interpretation of any portion of this Mortgage; (d) as more than one person has executed this Mortgage as "Mortgagor," the obligations of both such Mortgagors hereunder shall be joint and

49515863;5

several, and defined terms "Mortgagor" and "Mortgagors" shall be construed to include either or both Mortgagors.

*{Signature page follows}*

IN WITNESS WHEREOF, the undersigned have executed this Mortgage effective as of the Effective Date written above.

**Signed, Sealed, and Delivered**
**In the Presence of:**

**MORTGAGORS:**

**WITNESS 1:**

_____

Print Name: _____

**JOAN SILVERMAN,** a married woman

**WITNESS 2:**

_____

Print Name: _____

**WITNESS 1:**

_____

Print Name: _____

**ROBERT SILVERMAN,** a married man

**WITNESS 2:**

_____

Print Name: _____

STATE OF FLORIDA )
)
COUNTY OF _____ )

The foregoing instrument was executed, acknowledged and delivered before me this _____ day of _____, 2019, by **JOAN SILVERMAN,** a married woman, who is [__] personally known to me or [__] has produced _____ as identification.

[NOTARIAL SEAL]

Print Name: _____
Notary Public, State and County Aforesaid
Commission #: _____
My Commission Expires: _____

STATE OF FLORIDA )
)
COUNTY OF _____ )

The foregoing instrument was executed, acknowledged and delivered before me this _____ day of _____, 2019, by **ROBERT SILVERMAN,** a married man, who is [__] personally known to me or [__] has produced _____ as identification.

[NOTARIAL SEAL]

Print Name: _____
Notary Public, State and County Aforesaid
Commission #: _____
My Commission Expires: _____

49515863;5

## **Exhibit A**

The Land

Lot 10, Block E of BELLEVIEW'S SUNNY SKIES SUBDIVISION, according to the plat thereof as recorded in Plat Book F, Page(s) 144, of the Public Records of Marion County, Florida.

Parcel Identification Number: **4530-005-010**

# Exhibit D

Record and Return to:
Jacob A. Brown, Esq.
Akerman LLP
50 N. Laura St., Suite 3100
Jacksonville, FL 32202

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

In re:

JOAN B. SILVERMAN,

Case No.: 3:10-bk-10718-JAF

                    Debtor.

Chapter 7

_____/

## RELEASE OF TRUSTEE'S NOTICE OF INTEREST IN PROPERTY

Aaron R. Cohen, Chapter 7 Trustee, in his capacity as trustee for the bankruptcy estate of Joan B. Silverman, hereby releases the Trustee's Notice of Interest in Property recorded on August 20, 2019, in the Public Records of Marion County, Florida, commencing at Official Records Book 7026, Pages 0826-0829, with respect to the real property more particularly described as follows:

Lot 10, Block E of BELLEVIEW'S SUNNY SKIES SUBDIVISION, according to the plat thereof as recorded in Plat Book F, Page(s) 144, of the Public Records of Marion County, Florida.

Parcel Identification Number: **4530-005-010**

also known as 7000 SE 123rd Place, Belleview, Florida 34420 (the "Property").

The Trustee's Notice of Interest in Property related to the above-described property shall hereby be of no further force or effect.

50597081;1

Dated: _____, 2019

AKERMAN LLP

Sworn to and subscribed before me
by Jacob A. Brown, who is personally
known to me and who did take an oath
this _____ day of _____, 2019.

By:_____

    Jacob A. Brown
    Florida Bar No.: 0170038
    Email: jacob.brown@akerman.com
    50 North Laura Street, Suite 3100
    Jacksonville, Florida  32202
    Telephone:  (904) 798-3700
    Facsimile:  (904) 798-3730

_____
Notary Public
State of Florida at Large
My Commission Expires: _____
My Commission Number:_____

Attorneys for Aaron R. Cohen, Chapter 7 Trustee

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing was furnished by U.S. mail, postage prepaid and properly addressed, this _____ day of _____, 2019, to:

Joan B. Silverman
7000 SE 123rd Place
Belleview, FL 34420

Aaron R. Cohen, Chapter 7 Trustee
P.O. Box 4218
Jacksonville, FL 32201-4218

Bryan K. Mickler, Esq.
Mickler & Mickler
5452 Arlington Expressway
Jacksonville, FL 32211

Charles R. Sterbach
Scott E. Bomkamp
United States Trustee
400 W. Washington Street, Suite 1100
Orlando, FL 32801

Douglas W. Neway, Chapter 13 Trustee
Post Office Box 4308
Jacksonville, FL 32201

Robert Silverman
7000 SE 123rd Place
Belleview, FL 34420

_____
Attorney

2